IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BOTEILHO HAWAIʻI ENTERPRISES, INC., dba Cloverleaf Dairy,<br><br>　　　　　Plaintiff-Appellee,<br><br>　　vs.<br><br>DUTCH-HAWAIIAN DAIRY FARMS, LLC; MAUNA KEA MOO, LLC; and KEES KEA,<br><br>　　　　　Defendant-Appellants. | Civil No. 23-00147 DKW-KJM<br><br>**ORDER GRANTING PLAINTIFF-APPELLEE'S MOTION TO DISMISS** |

　　　　Defendant-Appellants Dutch-Hawaiian Dairy Farms, LLC, Mauna Kea Moo, LLC, and Kees Kea (collectively, "Appellants") appeal from a March 13, 2023 decision by the United States Bankruptcy Court for the District of Hawaiʻi. *See* Dkt. No. 1; Dkt. No. 1-2.  That decision, associated with the parties' underlying Bankruptcy case, ordered Appellants to turn over certain cattle "not in dispute" to Plaintiff-Appellee Boteilho Hawaiʻi Enterprises, Inc. ("Boteilho"), along with certain equipment, including a trailer and fencing panels.  Dkt. No. 1-2.

　　　　Before the Court is Boteilho's Motion to Dismiss ("MTD"), which asserts that this Court lacks subject matter jurisdiction over the Bankruptcy appeal because it is premature.  Dkt. No. 3.  This Court's jurisdiction to hear appeals from

1

decisions of the Bankruptcy Court is generally limited to "final judgments, orders, and decrees" under 28 U.S.C. § 158(a)(1), and both parties agree that the Bankruptcy decision at issue here is not final. Nevertheless, Appellants contend that the decision is immediately appealable under either of two exceptions to the general rule against interlocutory appeals: (1) the *Forgay* doctrine and/or (2) the Court's discretionary authority to grant interlocutory review under 28 U.S.C. § 158(a)(3). Because the *Forgay* doctrine does not apply, and the basis for the appeal does not support discretionary interlocutory review, the MTD is GRANTED.

## RELEVANT BACKGROUND

On November 21, 2022, Boteilho filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Hawaiʻi, initiating Bankruptcy Case No. 22-00827 (RJF). *See* Dkt. No. 6 at 1. Shortly thereafter, Boteilho also initiated an adversary proceeding, claiming that Appellants were in possession of certain assets belonging to Boteilho, including cattle and equipment. *Id.* On February 17, 2023, Boteilho filed a motion for summary judgment, seeking to compel Appellants to turn over those assets. *Id.* Following briefing and a March 10, 2023 hearing, the Bankruptcy Court entered a March 13, 2023 order partially granting that motion. *Id.*; Dkt. No. 1-2 ("March 13 Order"). Therein, the Bankruptcy Court stated, as relevant here:

1. [Appellants] are ordered to turn over the trailer and fencing panels identified in [Boteilho]'s Motion for Summary Judgment.

2. [Appellants] are ordered to turn over [Boteilho]'s cattle. In particular, the cattle subject to turnover are those cattle that [Boteilho] delivered to [Appellants] and are not in dispute. [Appellants] are ordered to permit [Boteilho] onto their property for the identification, collection, and transport of the cattle. [Appellants] are ordered to assist in the identification of the cattle to be turned over.

3. [Boteilho] shall arrange and bear all costs of the collection and transport of [Boteilho]'s cattle. [Boteilho] shall abide by any applicable statutory requirements related to the movement of the cattle.

4. The Scheduling Conference is continued to April 28, 2023 at 2:00 P.M.

5. This order is made without prejudice as to any other claims the parties may have against one another.

Dkt. No. 1-2 at 2–3. Pursuant to this order, on March 23, 2023, the parties attended a site inspection, and, over the course of three days, Appellants permitted the turnover of 165 head of cattle. Dkt. No. 3 at 4. Boteilho claims that thirty-five additional cattle are "missing" and were not turned over as ordered. *Id.* Boteilho also claims ownership of all offspring of the cattle at issue, none of which were turned over. *Id.*

Also on March 23, 2023, Appellants filed an appeal of the March 13 Order in this Court. Dkt. No. 1. On April 7, 2023, Boteilho filed the instant MTD, contending that this Court lacks subject matter jurisdiction over the appeal because

3

the March 13 Order is a non-appealable, interlocutory order. Dkt. No. 3. On June 9, 2023, Appellants opposed the MTD, and, on June 16, 2023, Boteilho replied. Dkt. Nos. 7, 9.[1] The Court elected to decide these matters without a hearing pursuant to Local Rule 7.1(c), *see* Dkt. No. 10, and this Order follows.

## LEGAL STANDARD

28 U.S.C.A. § 158 states:

(a) The district courts of the United States shall have jurisdiction to hear appeals

    (1) from final judgments, orders, and decrees;

    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title;[2] and

    (3) with leave of the court, from other interlocutory orders and decrees;

of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

According to the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, "finality for purposes of jurisdiction over 'as of right' appeals under 28 U.S.C. § 158(a)(1) in adversary proceedings does not differ from finality in ordinary federal civil actions under 28 U.S.C. § 1291." *In re Belli*, 268 B.R. 851, 855 (9th Cir. 2001). Fed. R. Civ. P. 54(b) controls the analysis of finality of judgments for purposes of

---

[1] Contemporaneously, the parties briefed the merits of the appeal. *See* Dkt. Nos. 6, 8, 11.
[2] This provision does not apply in this case.

appeal in federal civil actions—and, thus, for bankruptcy adversary proceedings as well. *Id.* Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *does not end the action* as to any of the claims or parties . . . ." Fed. R. Civ. P. 54(b) (emphasis added). "Rule 54(b) reflects the federal policy against piecemeal appeals and waste of judicial resources." *In re Belli*, 268 B.R. at 855.

## DISCUSSION

### I.     Local Rule 7.8

As a preliminary matter, as Appellants point out, Dkt. No. 7 at 2–5, Boteilho failed to comply with Local Rule 7.8 in filing the instant MTD. Local Rule 7.8 states, as relevant here:

> [C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential partial or complete resolution. The conference shall take place at least seven (7) days prior to the filing of the motion. If the parties are unable to reach a resolution which eliminates the necessity for a motion, counsel for the movant shall include in the motion a statement to the following effect: "This motion is made following the conference of counsel pursuant to LR 7.8, which took place on [date]."

In its MTD, Boteilho did not include a statement of compliance with this Local Rule, *see generally* Dkt. No. 3, and, indeed, Boteilho concedes that no pre-filing conference took place. Dkt. No. 9 at 11–12. On that ground, Appellants contend that the MTD should be denied. Dkt. No. 7 at 2–5.

The Court agrees with Appellants that Boteilho violated the Local Rule, and Boteilho's arguments as to why the rule should be waived in its favor are not persuasive. *See* Dkt. No. 9 at 11–12 (contending that "there was no need to meet and confer under Local Rule 7.8" because "[a] meet and confer would not serve the purpose of the rule").

However, because the question raised by the MTD is a matter of subject matter jurisdiction, the Court must, and does, consider the issue *sua sponte* and is aided herein by the parties' presentation of the issue in their briefings.

**II.   The MTD is GRANTED because the Court lacks subject matter jurisdiction over this appeal.**

Neither party disputes that the Bankruptcy Court's March 13 Order is not final. *See* Dkt. No. 7 at 5 (Appellants conceding that "[t]he order appealed from" is "not final"). However, Appellants contend that two separate exceptions permit interlocutory appeal. *Id.* at 5–11. As discussed below, the Court disagrees.

**A.   The *Forgay* Doctrine**

Appellants assert that the appeal may proceed under the *Forgay* doctrine because the March 13 Order "commands the immediate disposition of property." *Id.* at 5, 6–7 ("The United States Court of Appeals for the Ninth Circuit has recognized that orders requiring the immediate disposition of property are immediately appealable despite the standard final judgment rule."). In *Forgay v.*

*Conrad*, 47 U.S. 201, 202 (1848), the Supreme Court held that a particular decree was final because:

> [i]t decides the title of all the property in dispute, decrees that it be delivered up to the complainant, and that execution issue . . . ; nothing is left to be done but the ministerial duty of stating an account, which in this case is in the nature of an execution to carry out the decree.

47 U.S. at 202. In general terms, therefore, *Forgay* held that interlocutory orders might be immediately appealable where they (i) directed the disposition of property and (ii) subjected the appellant to irreparable injury absent immediate review. *See also Weingartner v. Union Oil Co. of Cal.*, 431 F.2d 26, 29 (9th Cir. 1970) (explaining the application of *Forgay* rests upon "the likelihood of 'irreparable harm' to a party if immediate review is not allowed").

*Forgay* does not apply for two reasons. First, although Appellants pay lip service to *Forgay*'s irreparable injury element[3], they have not plausibly claimed irreparable harm absent immediate review. The Supreme Court has explained:

> [T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. . . . The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

---

[3]*See* Dkt. No. 7 at 6 ("Every day that Appellants are deprived of the use of their livestock, their business and livelihood is unduly and irreparably damaged.").

*Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also Gonzalez v. Recht Fam. P'ship*, 51 F. Supp. 3d 989, 992 (S.D. Cal. 2014) ("Irreparable injury is that which is substantial and not compensable by monetary damages or other legal remedies.") (citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)). There is nothing in the record here demonstrating that review of the March 13 Order in the ordinary course of litigation (upon final judgment or decree) would cause irreparable harm: there is, for instance, no allegation that there is something inherently irreplaceable about the cattle at issue; there is no claim that the cattle's monetary value could not be accurately determined in a future accounting; and there is no claim that adequate compensation or other corrective relief will be unavailable at a later date.

Second, *Forgay* does not apply because the March 13 Order only disposes of *some* of the property at issue before the Bankruptcy Court and clearly contemplates additional substantial proceedings. *See* Dkt. No. 1-2 at 2–3 (calendaring a future scheduling conference without prejudice to "any other claims the parties may have against each other"). The decree at issue in *Forgay* "decide[d] the title of *all* the property in dispute" where "nothing [wa]s left to be done but the ministerial duty of stating an account." 47 U.S. at 202 (emphasis added).[4] The parties appear to

---

[4] A more expansive application of *Forgay*—*e.g.*, the application apparently suggested by Appellants here, that it should apply wherever an interlocutory order commands the disposition of *any* property, *see* Dkt. No. 7 at 5—would defeat Rule 54(b)'s general policy "against

agree that the factual circumstances here are far different. In particular, although the March 13 order addresses the turnover of some cattle "not in dispute", it does not address the offspring of that cattle, nor does it address cattle that are not "identifiable" nor cattle left to "run wild" on Appellant's land. *See e.g.*, Dkt. No. 6 at 14–15; Dkt. No. 7 at 8–10.

In short, interlocutory review based on the *Forgay* exception is not warranted.

## B. Discretionary Review

Appellants assert that this Court has the discretionary authority to grant them leave to appeal and that discretion should be exercised in their favor. *See* 28 U.S.C. § 158(a)(3) (permitting appeals from interlocutory orders "with leave of the court").[5] In considering whether to grant leave to appeal, courts should "look[] to

---

piecemeal appeals and waste of judicial resources." *See In re Belli*, 268 B.R. at 855. As Boteilho explained:

> Permitting an appeal at this juncture introduces the opportunity for piecemeal appeals. According to Defendants, if and when they are ordered to turn over the offspring, another appeal under *Forgay* would be permitted. And when the remaining "disputed" cattle are ordered to be turned over, they can again appeal that decision. Piecemeal appeals undermine the very purpose of the finality doctrine. [The exceptions to the rule] should not be applied so as to 'swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.' *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994).

Dkt. No. 9 at 5–6.
[5]Appellants did not move for leave to appeal under 28 U.S.C. § 158(a)(3). However, this Order treats Appellants' brief in opposition to the MTD as such a motion. *See* Dkt. No. 7 at 7–10.

the standards set forth in 28 U.S.C. § 1292(b), which concerns the taking of interlocutory appeals from the district court to the court of appeals." *In re Roderick Timber Co.*, 185 B.R. 601, 604 (B.A.P. 9th Cir. 1995). The relevant standards under Section 1292(b) are "whether the order on appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion and whether an immediate appeal may materially advance the ultimate termination of the litigation." *Id.*; *see also* Dkt. No. 7 at 7–8 (citing the same factors as taken from a First Circuit Bankruptcy Appellate Panel case).

Here, the appeal does not involve a "controlling question of law." The term "question of law" means a "'pure question of law' rather than a mixed question of law and fact or the application of law to a particular set of facts." *See In re Moore*, 2011 WL 5593185 at *3 (D. Haw. Nov. 17, 2011) (citing *In re Novatel Wireless Sec. Litig.*, 2013 WL 6055270 (S.D. Cal. Nov. 19, 2013)). Appellants contend that the March 13 Order should have decided that the cattle at issue were "running wild" on their land. Dkt. No. 7 at 8–9.[6] This is not a pure question of law. It involves the application of H.R.S. § 142-44 to the manner in which the cattle on Appellants' land were found, cared for and living. Indeed, Appellants do not appear to have any quarrel with the legal definition adopted by the Bankruptcy

---

[6]Section 142-44 of the Hawaiʻi Revised Statutes ("H.R.S. § 142-44") states, "All cattle, horses, mules, donkeys, sheep, goats, and swine, over twelve months of age, not marked or branded, which may be running wild at any time on any lands in the State, shall belong to and be the property of the owners or lessees of the lands on which the animals are then running."

10

Judge. *See* Dkt. No. 7 at 8–10 (taking issue with the application of the law to the facts, not the definition of "running wild" itself).

Nor have Appellants shown that there is any substantial ground for difference of opinion on the relevant question of law. "To determine if a 'substantial ground for difference of opinion' exists under [Section] 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Horowitz v. Sulla*, 2017 WL 1352211 at *7 (D. Haw. Apr. 11, 2017) (quoting *Couch*, 611 F.3d at 633). Here, Appellants have not pointed to any such indicia that the meaning of the phrase "running wild" is treated inconsistently or presents difficult issues of first impression.

The Court declines to exercise its 28 U.S.C. § 158(a) discretionary authority to grant interlocutory review in the circumstances presented.

## **CONCLUSION**

Boteilho's motion to dismiss, Dkt. No. 3, is GRANTED. This appeal is DISMISSED WITHOUT PREJUDICE to its assertion at the appropriate time. The Clerk is instructed to CLOSE the case.

IT IS SO ORDERED.

DATED: July 11, 2023 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

---

*Boteilho Hawaii Enterprises, Inc. vs. Dutch-Hawaiian Dairy Farms, LLC; et al.*; Civil No. 23-00147 DKW-KJM; **ORDER GRANTING PLAINTIFF-APPELLEE'S MOTION TO DISMISS**